IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER B., by and through his parents, Joanne B. and Ray B.,<br><br>        Plaintiffs,<br><br>  vs.<br><br>PATRICIA HAMAMOTO, in her official capacity as Superintendent of the Hawaii Public Schools; and DEPARTMENT OF EDUCATION, STATE OF HAWAII,<br><br>        Defendants. | Civ. No. 06-00545 HG-BMK<br><br>SUPPLEMENTAL SPECIAL MASTER'S REPORT RECOMMENDING THAT PLAINTIFF'S MOTION BE GRANTED IN PART AND DENIED IN PART |

### SUPPLEMENTAL SPECIAL MASTER'S REPORT RECOMMENDING THAT PLAINTIFF'S MOTION BE GRANTED IN PART AND DENIED IN PART

Plaintiff Christopher B. filed a motion for determination of reimbursement and attorney's fees and costs on February 20, 2008, following the Court's ruling that he had been denied a fair and appropriate public education ("FAPE") by Defendants Patricia Hamamoto and the Department of Education of the State of Hawaii ("Defendants") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400.[1]  Defendants were ordered to file an

---

[1] The Court originally entered its ruling as a minute order on July 30, 2007; this was followed by a full written order on March 25, 2008.

opposition to Christopher B.'s motion by April 18, 2008. On April 4, 2008, the Court agreed to extend the opposition deadline to April 25, 2008. Sometime before April 25, Defendants advised the Court that they would be settling this case with Christopher B. On May 13, 2008, however, Christopher B. informed the Court that Defendants had still not yet engaged the Plaintiff in settlement negotiations or discussions to date.

Accordingly, the Special Master ordered Defendants to appear before it on June 5, 2008, to show cause why the Court should not award Christopher B. the $222,693.84 he seeks in reimbursement, and why Defendants should not be sanctioned for failing to either submit a timely opposition to Christopher B.'s motion or engage in meaningful settlement discussions as Defendants indicated they would. In addition, the Special Master recommended that the Court award Christopher B. the $64,968.44. After careful consideration of Plaintiffs' motion, the arguments of counsel, and the supporting and opposing memoranda, the Special Master further recommends, in addition to the $64,968.44 previously recommended, that Christopher B. be awarded **$180,129.70** in reimbursement of educational expenses and related services.[2]

---

[2]The Court notes that Ms. Vasey's reply brief includes a request for an additional $3,977.50 in fees incurred since her motion was filed. This request is not properly before the Court at this time, and will not be considered.

## DISCUSSION

I. SANCTIONS

After hearing the testimony of counsel, the Court is satisfied that it need impose no further sanctions on Defendants. While Defendants were remiss in failing to adequately communicate and coordinate with Plaintiff regarding settlement, its conduct was not egregious enough to warrant any additional sanctions. The Court will consider the merits of Defendants' objections to Plaintiff's reimbursement request.

II. DEFENDANTS' OBJECTIONS TO REIMBURSEMENT REQUEST

    A. Medical Costs

Defendants claim that Plaintiff is not entitled to reimbursement for $1,408.28 in prescription medication expenses he incurred between April 20, 2006, and October 25, 2007, and $1,025 for Plaintiff's hospitalization at Kahi Mohala. Specifically, Defendants claim that these prescription expenses were incurred "beyond the 2006-2007 school year" and that in general, medical expenses "are not the responsibility of the education agency under the IDEA 300.34(c)(5)." (Defs.' Mem. Resp. OSC 9.)

In response to the Kahi Mohala charges, Plaintiff points to Judge Gillmor's discussion of the circumstances in which a residential placement can be

deemed a service related to a student's educational plan, and her ruling that "Christopher is the type of disabled student who is entitled to residential treatment pursuant to IDEA." (Order Reversing ALJ 30.) The residential program referred to by Judge Gillmor was not Kahi Mohala, however, but Gateway Academy, at which Plaintiff eventually enrolled. Kahi Mohala is a hospital, not a residential placement. (<u>See</u> Order Reversing ALJ 12 (referring to Christopher's stay at Kahi Mohala as a "hospitalization" and discussing Kahi Mohala's recommendation that Christopher be placed in a "residential placement" after leaving Kahi Mohala).) Because Kahi Mohala, at least in this particular instance, served as a hospital rather than as a residential placement, Plaintiff cannot recover these costs from Defendants.

In addition, Plaintiff fails to provide any reason why he should be awarded reimbursement for his prescription medications. Accordingly, the Special Master recommends that Plaintiff's requested reimbursement will be reduced by $2,433.28 for medical expenses ineligible for reimbursement under the IDEA.

B. <u>Trial Preparation of Dr. Andrew Erkis</u>

Defendants next object to reimbursing Plaintiff for the $300 spent for the trial preparation and court testimony of Dr. Andrew J. Erkis on the grounds that it is both outside the scope of Judge Gillmor's order, and contrary to the decision

in Arlington Cent. School Dist. Board of Educ. v. Murphy, 548 U.S. 291 (2006). Plaintiff does not respond to this argument, and the Court agrees with Defendants. The Special Master recommends that Plaintiffs' requested reimbursement will be further reduced by $300.

    C.  Odyssey Transport Agency, LLC

Defendants further object to reimbursing Plaintiff for $5,636.46 paid to Odyssey Transport Company for transporting him to the Second Nature summer program, claiming that "[n]othing in Judge Gillmor's order requires Defendant to pay any transportation costs." (Defs.' Mem. Resp. OSC 9.) This is too narrow a reading of the Court's previous order. Judge Gillmor explicitly ordered that the DOE "is required to reimburse Christopher's parents for his placement in the Second Nature program." (Order Reversing ALJ 37.) Plaintiff's "placement" in the program must include not only his tuition fees, but also his transportation to the program. Accordingly, the Special Master recommends that the Court award Plaintiff reimbursement for the expenses he incurred with Odyssey Transport Company.

    D.  Other Transportation Costs

Defendants similarly object to other transportation costs totaling $14,338.11 for "travel expenses necessary for parents to participate in the

5

[Gateway] therapeutic program, and for Christopher's home visits during school breaks." (Pl.'s Mot. For Reimbursement, Decl. of Joanne B., ¶ 13.) For the reasons described above, the Special Master recommends that the Court award Plaintiff reimbursement the 2006-2007 school-year expenditures on the ground that they are encompassed within Judge Gillmor's order that Defendants' pay for Plaintiff's "placement . . . [at] the Gateway Academy during the 2006-2007 year." (Order Reversing ALJ 37.)

Defendants further object, however, that some of these travel expenses pertain to travel that occurred after the 2006-2007 school year ended on July 28, 2007.[3] The Special Master agrees that Defendants are not required to reimburse Plaintiff for any travel expenses after July 28, 2007, and therefore recommends that Plaintiff's requested reimbursement award be reduced by $3,074.60 to exclude all expenses incurred after that date.

E. <u>Psychiatrist and Prescription Costs</u>

Defendants also object to $4,418.26 in psychiatrist and prescription costs paid during the course of Plaintiff's placement at Gateway Academy. This

---

[3]The Special Master determines that the "school year" at issue here terminated on July 28, 2007, based on Plaintiff's representation that this is when the Gateway Academy summer program ended. The Special Master finds that Plaintiff is entitled to reimbursement for all expenses through the close of this summer program, since his IEP included extended-year services.

comprises $4,287.00 in psychiatric charges and $131.26 in pharmacy charges. Defendants argue that these are not reimbursable expenses under the IDEA, and that some of them were incurred after the end of the 2006-2007 year. Plaintiff contends that these costs "meet the criteria under Clovis as valid educational expenses under IDEA" and that they "do not fall under expenses identified as non-reimbursable under IDEA 300.34(c)(5).

Under the IDEA, the state may be required to pay not only for a child's special educational services, but also for "related services," which include "supportive services (including . . . psychological services . . . and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(A). Thus, the Special Master recommends that Plaintiff's request for reimbursement be granted for the $3,912.00 in psychiatric charges incurred prior to the end of the 2006-2007 school year on July 28, 2007, and which are eligible as "psychological services," but not the $375.00 in psychiatric services incurred after the school year's end on July 28. In addition, the Special Master recommends that Plaintiff not be allowed to recover the $131.26 he seeks for prescription medication expenses, since Plaintiff

has failed to demonstrate that these medications were for diagnostic and evaluation purposes only.

    F.  <u>Reimbursement After June 7, 2007</u>

Finally, Defendants object to Plaintiff's request for reimbursement of the $51,903.29 in Gateway tuition expenses incurred after June 7, 2007, on the grounds that this was the end of the 2006-2007 school year in Hawaii, and that Plaintiff's parents had already moved to the Oregon by this date. At the hearing, Plaintiff conceded that his parents have now moved to Oregon, and withdrew his request for ongoing reimbursement after the close of the 2006-2007 school year. For the reasons discussed above, the Special Master determines that this year ended for Plaintiff on July 28, 2007. Accordingly, the Special Master recommends that Plaintiff's reimbursement request be further reduced by $36,250 for tuition expenses incurred after July 28, 2007.

In sum, the Special Master recommends that Plaintiff's reimbursement request of $222,693.84 be reduced by a total of $42,564.14, for a total reimbursement award of **$180,129.70**.

III.  RECONSIDERATION OF ATTORNEY'S FEES

Defendants request that the Special Master reconsider its earlier recommendation to award $64,968.44 in fees and costs on the ground that

Plaintiff's counsel spent an unreasonable amount of time on this litigation. Defendants point out in particular the 111.9 hours she spent on the appeal of the administrative hearing, the 39 hours on the opening brief, and the 25.2 hours she spent communicating with outside counsel.

The Special Master declines to alter his previous recommendation.[4] The Special Master finds the amount of time spent on this case to be quite reasonable, including the opening brief, the appeal as a whole, and communication with outside counsel. Defendants offer little support for its argument to the contrary.

## CONCLUSION

For the foregoing reasons, the Special Master RECOMMENDS that Christopher B.'s motion for reimbursement be GRANTED IN PART and DENIED IN PART, and that he be awarded reimbursement of educational expenses and related services in the amount of $180,129.70, in addition to the $64,968.44 in attorney's fees previously recommended by the Special Master.

---

[4] Defendants' request has not been construed as a motion, since the Court has yet to rule on the Special Master's previous recommendation.

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: June 19, 2008

Christopher B. v. Hamamoto, Civ. No. 06-00545 HG-BMK; SUPPLEMENTAL SPECIAL MASTER'S REPORT RECOMMENDING THAT PLAINTIFF'S MOTION BE GRANTED IN PART AND DENIED IN PART.